NOT DESIGNATED FOR PUBLICATION

No. 128,174

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

DYLAN NATHANIEL PARKS-MAKI,
*Appellant.*

MEMORANDUM OPINION

Appeal from Linn District Court; ANDREA PURVIS, judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

PER CURIAM: Dylan Parks-Maki pleaded no contest to intentional second-degree murder for the killing of Dawn Rosso. During the time between his plea hearing and sentencing, Parks-Maki moved to withdraw the plea, claiming he did not understand its consequences when he entered the plea agreement. The district court held an evidentiary hearing, where the same judge who presided over the plea hearing heard testimony from Parks-Maki and his former attorney regarding the plea. The court denied the motion and imposed a prison sentence.

1

Parks-Maki now appeals, challenging the court's denial of his motion to withdraw his plea as well as several aspects of the pretrial proceedings in the three years leading up to the plea agreement. After carefully reviewing the record and the parties' arguments, we affirm the district court's denial of Parks-Maki's motion. We do not reach his other challenges because Parks-Maki waived those claims and defenses by entering his plea.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2020, the State charged Parks-Maki with intentional second-degree murder, aggravated battery of a law enforcement officer, and interference with law enforcement. The parties are familiar with the details surrounding those charges, but those facts are not relevant to the issues raised on appeal. Instead, we focus on the procedures leading up to and following Parks-Maki's eventual no-contest plea.

*Pretrial Competency Proceedings*

About a month into the criminal case, the district court ordered Parks-Maki to undergo a competency evaluation to assess his ability to stand trial. The evaluation, which Parks-Maki completed in August 2020, found that he was not competent to proceed with the case at that time. The evaluator reported that Parks-Maki did not "demonstrate an awareness of the legal situation" he faced—he could not or would not list his charges, and he thought the charges were not serious and would be dropped at the preliminary hearing. Parks-Maki also exhibited a "high level of distrust [with] his attorney," which the evaluator thought could impact Parks-Maki's ability to assist in his own defense. Based on the evaluation, Parks-Maki's attorney requested a competency hearing to determine whether the case should go forward.

In January 2021, Parks-Maki's attorney withdrew from the case. The district court appointed new counsel and conducted a competency hearing in February 2021. At the

hearing, the court found that Parks-Maki was not competent to stand trial at that time, adopting the recommendation of the earlier competency evaluation. The court ordered Parks-Maki to be committed to Larned State Hospital for 90 days, staying all matters in the case until it could review a subsequent evaluation.

Based on recommendations from the Larned medical team, the district court entered orders continuing Parks-Maki's commitment over the next several months. At some point, he was transferred to Osawatomie State Hospital. During this time, the court appointed Zane Todd to serve as Parks-Maki's attorney.

In March 2023, the district court received correspondence from the Osawatomie hospital stating that Parks-Maki had been discharged because he no longer met the criteria of a mentally ill person subject to involuntary commitment under K.S.A. 59-2966. The district court held another competency hearing a little over a month later. Neither the State nor Parks-Maki (or his attorney) objected to the findings in the Osawatomie evaluation. The court found that Parks-Maki was competent to proceed and scheduled the case for preliminary hearing and trial.

*The No-Contest Plea*

The case was scheduled for a jury trial in October 2023. Immediately before voir dire, Todd informed the district court that Parks-Maki was interested in a plea. Todd explained that Parks-Maki initially was not interested in a plea agreement but recently asked Todd to explore plea negotiations. The parties eventually agreed that Parks-Maki would plead no contest to second-degree murder in exchange for the State dismissing the other charges in the case.

At the plea hearing, Parks-Maki informed the district court that he was pleading "no contest" to second-degree murder. The district court then asked Parks-Maki a series

of questions relating to the plea agreement. Parks-Maki told the district court that he was satisfied with Todd's representation. Although he questioned whether Todd had enough time to work on the case, Parks-Maki believed that Todd had enough time to review the plea agreement. Parks-Maki told the district court that he agreed with his anticipated criminal-history score and that he had seen "something similar" to the sentencing grid. He also told the court that he understood the rights that he waived by entering into an agreement. He denied being coerced or persuaded to enter a plea. Next, the district court reviewed Parks-Maki's understanding of the violent offender registration requirements, and Parks-Maki maintained his desire to plead no contest. The district court also asked Parks-Maki about the medications he was taking and if he felt like he was in a state of mind to make decisions surrounding his plea. Parks-Maki responded that he was taking two medications but felt he could make the decisions.

Parks-Maki showed some confusion about the legal impacts of his plea but ultimately understood those consequences after clarification from Todd and the court. The State summarized the evidence that would be presented at trial, and the court asked Parks-Maki if he thought that a jury could convict him based on that evidence. Parks-Maki was also confused about this question, but after some discussion, he confirmed that he was comfortable moving forward with the plea. The court found that the plea was voluntarily and knowingly made and found Parks-Maki guilty of intentional second-degree murder.

*Parks-Maki's Motion to Withdraw His Plea*

A few months later, Parks-Maki moved to withdraw his plea, stating he did not understand the plea or its consequences. At the same time, Todd moved to withdraw as Parks-Maki's attorney, citing a potential conflict of interest. The district court granted Todd's withdrawal motion and appointed new counsel, Robert Myers, to represent Parks-Maki going forward. The court then scheduled an evidentiary hearing on the motion.

4

At the hearing, Parks-Maki and Todd both testified, providing divergent explanations for what happened. Parks-Maki testified that there were parts of his plea that he did not understand. He stated that Todd never told him about the potential punishments for the charges he faced. Myers asked Parks-Maki if he and Todd had gone over each page of the plea agreement, initialing each page after they covered it, and Parks-Maki said that was not exactly what happened. Instead, there were some things he did not understand in the plea but that he initialed all the pages after Todd told him a "sad story about [Todd's] son" and that Todd would tell his son to take the plea. Parks-Maki told the court that he decided to "take the plea no matter what because of that."

Parks-Maki claimed that Todd "mistreated, misled and coerced" him during the pretrial proceedings. He testified that he would not have considered a plea if he "had understood what no contest actually meant" because he did not know that a no-contest plea had the same effect as a guilty plea. According to Parks-Maki, Todd did not speak to him about what a no-contest plea was until after the plea hearing. Parks-Maki said that Todd misled him into thinking that a plea of no contest was maintaining his innocence when Todd knew that he would be found guilty.

During his testimony, Parks-Maki repeatedly complained that Myers was not asking him the right questions about why he wanted to withdraw the plea. He said that he did not want to withdraw the plea because he could not understand it. Parks-Maki testified that he wanted to withdraw the plea because he suffered from head injuries before the hearing; he did not understand what no contest meant; he did not hear all the judge's questions at the hearing; he was unable to properly prepare for trial; and he has "brain impairments" and is unable to remember things, make decisions, and solve problems. And that Todd "persist[ed] to try to convince me to take the plea even after I said [on] several occasions I did not want to take the plea."

Todd testified that a week before trial, Parks-Maki said that he wanted to explore options for a plea, so Todd opened communications with the State. He stated that he and Parks-Maki went through the entire agreement to ensure that Parks-Maki understood everything. Todd had no concerns that Parks-Maki was incapable of understanding the plea agreement due to his head injury. Addressing Parks-Maki's claims that Todd coerced him, Todd said that he did not try to persuade him one way or another, but he candidly told Parks-Maki that the State's evidence was "overwhelming" and that "he would in all likelihood be convicted." Todd stated that he told Parks-Maki that if he was Todd's son, Todd would tell him to take the plea. Todd explained that he shared that opinion so Parks-Maki understood that Todd cared about him and would give the same advice to his own family member.

The district court judge who presided over the evidentiary hearing was the same judge who had conducted the plea hearing and other pretrial matters in the previous several months. After hearing all the evidence, the judge denied the motion, finding that Parks-Maki had competent representation, that he was not misled or coerced in taking the plea, and that the plea was understandingly made. The court later sentenced Parks-Maki to 186 months in prison.

DISCUSSION

Parks-Maki raises several issues on appeal, challenging aspects of the competency and pretrial proceedings as well as the district court's denial of his motion to withdraw his plea. But as the State points out, this court's authority to consider most of those claims hinges on whether Parks-Maki's plea remains effective. This is because when a person chooses to enter a plea, they waive all challenges and defenses that could otherwise be presented in an appeal from a conviction after trial.

To provide some greater context for this distinction, Kansas courts have long recognized that the right to appeal is defined by statute. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021). Relevant here, K.S.A. 22-3602(a) states that "[n]o appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507." Based on this language, Kansas courts have found that defendants who enter pleas may appeal the legality of their sentence or the denial of postconviction relief, such as a K.S.A. 60-1507 motion or a motion to withdraw a plea. See *State v. Showalter*, 319 Kan. 147, 172, 553 P.3d 276 (2024) (motion to withdraw a plea); *State v. Marinelli*, 307 Kan. 768, 778, 415 P.3d 405 (2018) (legality of sentence). But an effective plea acts as a waiver of all challenges to pretrial procedures and all defenses that could have been asserted at trial (and on appeal). *Marinelli*, 768 Kan. at 775.

This distinction reorders our consideration of the claims Parks-Maki has presented: We must first consider whether Parks-Maki's plea remains effective—that is, did the district court abuse its discretion in denying Parks-Maki's motion to withdraw his plea? We would have appellate jurisdiction to turn to Parks-Maki's other challenges only if we were to answer that question in the affirmative. But as we explain, Parks-Maki has not apprised us of any error in the district court's plea-withdrawal ruling. We thus affirm the district court's judgment.

1. *Parks-Maki has not shown the district court abused its discretion in denying his motion to withdraw his plea.*

In his motion to withdraw his plea, Parks-Maki argued that "he did not understand his plea." He renews this argument on appeal, claiming that he did not understand several aspects of his plea. He also adds two new arguments that were not specifically presented to the district court—summarily claiming that Todd did not provide effective

7

representation (given Parks-Maki's lack of understanding) and claiming that Todd coerced him into taking the plea.

Appellate courts are courts of review. This generally means that issues not presented to the district court cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). In some instances, appellate courts may decide to consider unpreserved issues if the record is sufficient to support that consideration and appellate review is otherwise warranted. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). But Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Parks-Maki does not acknowledge that his claims on appeal expand beyond his arguments to the district court. Nor does he explain why appellate review of these newly raised claims is possible or warranted based on the record before us. Instead, he concentrates his argument and discussion on the claim that was presented at the evidentiary hearing—whether he understood the consequences of his plea. We limit our review to that question here, noting that it encompasses some of Parks-Maki's concerns regarding Todd's representation and discussion before and during the plea hearing. See *State v. Soloman*, 257 Kan. 212, 221, 891 P.2d 407 (1995) (defendant's arguments against his plea were not reviewed because they were never presented to the district court).

A defendant has discretion to withdraw a plea at any time before sentencing when a defendant shows good cause for that withdrawal. K.S.A. 22-3210(d)(1). Generally, district courts consider three factors—what we often describe as the *Edgar* factors after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)—when deciding whether a defendant has shown good cause to withdraw a plea. These factors assess (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly

8

and understandingly made. *State v. Bilbrey*, 317 Kan. 57, 62, 523 P.3d 1078 (2023). While courts may consider other circumstances in assessing whether a plea can be withdrawn, the *Edgar* factors serve as "viable benchmarks" for a district court when exercising its discretion. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

As the movant, Parks-Maki must demonstrate on appeal that the district court erred in denying his motion. *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021). Appellate courts only set aside a district court's ruling on a presentence motion to withdraw a plea when that ruling results from an abuse of discretion—that is, when the ruling is arbitrary, fanciful, or unreasonable or based on a legal or factual error. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025); *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017). In applying this standard, we do not reweigh the evidence or assess witness credibility. 306 Kan. at 472. Instead, we uphold the district court's factual findings if they are supported by substantial competent evidence. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

Parks-Maki's motion sought to withdraw his plea based on the third *Edgar* factor—asserting the plea was not fairly or understandingly made. *Bilbrey*, 317 Kan. at 62. When considering this factor, a district court can observe the defendant's responses during the plea colloquy and assess whether they "truthfully and unequivocally answer[ed] those questions." *Schaefer*, 305 Kan. at 595. We will uphold a district court's determination that a defendant such as Parks-Maki understands his plea if the record shows that the defendant was "informed of the nature of the charges and of his constitutional rights that were waived." *State v. DeAnda*, 307 Kan. 500, 507, 411 P.3d 330 (2018).

K.S.A. 22-3210(a)(2) states that before a district court can accept a guilty or no-contest plea in felony cases, the defendant must be informed of "the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or

after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." While the statute requires the district court to inform the defendant of the maximum sentence, the court's failure to do so may be harmless and the plea effective if "'upon review of the entire record, the purpose of the statute is otherwise served'"—that is, "'if a defendant is advised of the plea's consequences in a written plea agreement, by defense counsel, or in some other way.'" *Johnson*, 307 Kan. at 445.

1.1. *Parks-Maki has not shown that the district court abused its discretion in finding that he was adequately informed of the consequences of the plea.*

Parks-Maki first argues that his plea was not understandably made because he was not informed of the consequences of the plea as required by K.S.A. 22-3210(a)(2). Specifically, Parks-Maki argues that Todd did not tell him about the potential penalties for the charged offense. He contends that the district court's failure to announce the maximum penalty cannot be harmless because the record does not show that Parks-Maki was informed of the penalties by other means.

The original charging document in this case stated that the potential prison sentence for intentional second-degree murder had a range between 147 and 653 months in prison, but the amended complaint omitted the potential sentence. During the plea hearing, Todd explained the details of the plea agreement to the district court:

> "The State . . . would be free to argue anywhere within the appropriate grid box for that particular charge, that is a Level 1. We do believe he is criminal history H. There was a criminal history done.
>
> "I have spoken to him on numerous occasions about any other priors, and I believe he is going to be an H. But the agreement specifically states that wherever he fits in the grid is where he is going to fit in the grid. And then if he is not in H, that plea agreement is still binding."

Todd informed the court that Parks-Maki would request the low range of the grid box and that he assumed the State would argue for the mid-to-high range. Parks-Maki told the district court that Todd's explanation was correct. Parks-Maki said he understood that the sentence would be "in a certain . . . box" and that the district court could choose any number in that box but could not go outside of it. The district court told Parks-Maki that the expected criminal-history score was H and that the sentencing guidelines would determine his sentence. Parks-Maki said that he had seen a grid before and then was handed one during the hearing.

At the end of the plea hearing, the district court asked Todd if Parks-Maki understood the nature of the charges and the consequences of the plea. Todd responded that Parks-Maki had "seen the grid many times" and had "quoted those numbers [meaning the applicable sentencing range] to me directly even before I showed him the grid." After the district court finished the plea colloquy and accepted Parks-Maki's plea, it stated that a presentence investigation report would be ordered and a sentencing date set.

During the hearing on the motion to withdraw his plea, Parks-Maki testified that Todd did not tell him about the potential punishment for the charges. Parks-Maki said that he was provided with a sentencing grid at the plea hearing and that he and Todd spoke about his sentence being in the H box. He testified that Todd told him that his criminal-history score determined his sentence. During the State's cross-examination, Parks-Maki acknowledged that he had seen the presentence investigation report's criminal-history score of H. But he stated that he would not have accepted the plea if he had known there was a possibility that score could change. The presentence investigation report ultimately found Parks-Maki's criminal-history score was H.

Todd testified that he and Parks-Maki received the State's offer and spent at least an hour going over his criminal history to verify the potential sentence that could be given. Todd added that Parks-Maki reviewed the sentencing grid box for intentional

11

second-degree murder with a criminal-history score of H. Todd testified that he had no doubts that Parks-Maki understood the charges against him and the consequences.

The record shows that the district court substantially complied with the requirement in K.S.A. 22-3210(a)(2) to inform Parks-Maki of the consequences of the charges before accepting his no-contest plea. While the district court did not state the maximum sentence on the record, it did inform Parks-Maki that H was the expected criminal-history score—which Parks-Maki also expected—and clarified that Parks-Maki understood where on the sentencing grid that put him. Parks-Maki was able to look at the sentencing grid during the hearing, a grid which Todd had given him that same day when they discussed the plea hearing over the course of an hour and a half. Thus, the record and Todd's testimony dispute Parks-Maki's claim that Todd did not tell him what the potential consequences were. The district court heard the divergent accounts of Parks-Maki and Todd and found Todd's testimony more credible.

Parks-Maki argues that *Noble v. State*, 240 Kan. 162, 164, 727 P.2d 473 (1986), supports his claim that the district court abused its discretion in this case. He asserts that the charging document in *Noble* that substantially informed the defendant of the charges was significantly different than the charging document in this case because the amended complaint here did not contain the maximum sentence for his crime. But the *Noble* court's reasoning was based on the facts of that case and does not establish a bright-line rule for assessing whether the "purpose of the statute is otherwise served." 240 Kan. at 165. Differences between the facts here and those in *Noble* do not compel us to reach a different result from the district court. The record contains substantial competent evidence that Parks-Maki understood the charge against him, understood the possible and actual criminal-history score, and had viewed a sentencing grid on multiple occasions, including during the plea hearing.

Parks-Maki also draws our attention to *State v. Beauclair*, 281 Kan. 230, 240, 130 P.3d 40 (2006), claiming he was not informed of the possible sentence because "the record does not include any details about the actual grid or the box that was supposedly discussed" at the hearing. But the *Beauclair* court did not require details about the specific sentence; the court found evidence that the defendant was satisfactorily apprised of his sentences in his trial attorney's sworn statements to that fact. 281 Kan. at 240. Likewise, we are satisfied by the evidence that—several times before entering his plea— Parks-Maki was made aware of the possible sentence he faced by pleading no contest.

In short, Parks-Maki has not shown that the district court abused its discretion when finding he understood the sentence he faced and the other consequences of his plea.

1.2. *Parks-Maki has not shown that the district court erred in finding that he understood the nature of a no-contest plea.*

Parks-Maki also argues that he did not understand his plea because he misunderstood what a no-contest plea was. He asserts that he thought that pleading no contest would result in a finding of innocence, not guilt. To support his claim, Parks-Maki points to the extensive discussion during the plea hearing about what it meant to plead no contest to a crime.

The parties agree that, at the outset of the plea hearing, Parks-Maki was confused about the effect of the plea. But our review of the transcript supports the district court's finding that Parks-Maki came to understand the consequences of the plea after discussing it with Todd and the court.

At the plea hearing, the district court asked if Parks-Maki understood that "if the Court accepts that plea, I will find you guilty of the offense." Parks-Maki responded that

he was "agreeing to pleading no contest which is not admitting guilt." The following discussion then took place:

> "THE COURT: . . . Your plea remains the same, no contest, but if I accept your plea and find that there is a factual basis for your plea, I have to determine at this time whether you are guilty. Okay?
>
> "THE DEFENDANT: Okay.
>
> "THE COURT: That doesn't change your plea, your plea will always be no contest.
>
> "THE DEFENDANT: Okay. So you are saying that you would be sentencing me.
>
> "THE COURT: Not today.
>
> "THE DEFENDANT: No, well—
>
> "THE COURT: But at some point.
>
> "THE DEFENDANT: Okay, Your Honor.
>
> "THE COURT: If I accept your plea of no contest and I find that there is a factual basis, does that make sense?
>
> "THE DEFENDANT: I believe so, Your Honor.
>
> "THE COURT: Okay. Do you need to ask your attorney about it?
>
> "(Discussion off the record between the defendant and his attorney.)
>
> "THE DEFENDANT: Okay.
>
> "THE COURT: Do you understand?
>
> "THE DEFENDANT: Yes, Your Honor."

The State then presented the evidence which it would bring forth in the event of a trial, and the district court asked Parks-Maki if a jury could find him guilty based on the evidence presented.

> "THE DEFENDANT: I don't know, that is kind of a tricky question, Your Honor. Not that you are trying to make it tricky but just—
>
> "THE COURT: Take a deep breath.
>
> "MR. TODD: Do you agree they could have testified to that?
>
> "THE DEFENDANT: Well, I wouldn't agree—I wouldn't agree that they could, no.

14

"THE COURT: You don't think if they heard that they could—

"THE DEFENDANT: No, no, not given—

"(Discussion off the record between the defendant and his attorney.)

"THE DEFENDANT: I believe it might raise some eyebrows, Your Honor, it might.

"MR. TODD: But could they find you guilty, that is the question. It is not they would 100 percent but could they find you guilty is what she is saying.

"THE DEFENDANT: I don't think so, Your Honor, no.

"THE COURT: Okay. Because I can't accept—I cannot accept your plea today if you believe that they couldn't find you guilty based on the information that the State just presented to me.

"THE DEFENDANT: Well, but that is if he is presenting just that but—

"MR. TODD: That is what the question is.

"THE COURT: That is what the question is.

"THE DEFENDANT: But I am able to present—

"THE COURT: That is true.

"THE DEFENDANT: So that is why I wouldn't think, you know what I mean?

"THE COURT: So it is true that if we actually went to trial, you would have the opportunity to question those witnesses and present your own case. You don't have to because that is not your burden.

"But the question is not whether they would hear other things if we went to trial, but whether if the jury heard what the State just said, could they convict you.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Okay. Very good."

Todd explained that he and Parks-Maki had talked about the State's evidence and that the evidence is enough to convict. Parks-Maki then sought clarification:

"THE DEFENDANT: If I understand you correctly, because I believe that if—I believe that if I am to understand it correctly, am in agreement with the plea agreement of no contest.

"THE COURT: So you saying that you are not contesting—you are not agreeing with what he is saying, but you are not contesting it; correct?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And if a jury heard just what he said.

"THE DEFENDANT: Well, what does contesting mean?

"THE COURT: That you are not—

"THE DEFENDANT: Does contesting mean not arguing?

"THE COURT: Right. Does that make sense?

"THE DEFENDANT: Yes, Your Honor. It is not a trial so I wouldn't be arguing right now.

"THE COURT: Right. And are you comfortable with going forward with the plea?

"THE DEFENDANT: Yes, Your Honor."

Parks-Maki argues that the confusion shown in the plea colloquy is evidence that his plea was not fairly and understandingly made. But the district court witnessed Parks-Maki during this conversation and was best placed to inquire about Parks-Maki's understanding. And throughout the dialogue, the district court repeatedly asked Parks-Maki if he understood what he was doing by entering a no-contest plea. Each time there appeared to be some doubt that Parks-Maki understood, the district court and Todd explained the legal concepts until Parks-Maki said he was comfortable moving forward with his plea. We add that the written plea agreement stated that if the district court "finds a sufficient factual basis exists to support the defendant's pleas, [it] will enter a finding of guilt." Parks-Maki initialed the bottom of that page, showing that he read and understood its contents.

Later in the hearing, Parks-Maki said that he understood the proceedings, that he had had the opportunity to discuss his questions with counsel, that his ability to plead was not interfered, and that he was in the right state of mind to make such a decision. And when the district court announced that it found Parks-Maki guilty of second-degree murder under count 1 and that counts 2 and 3 were dismissed with prejudice, Parks-Maki responded, "Thank you, Your Honor."

16

This court "will not overturn a trial court's weighing of the evidence or assessment of witness credibility from a cold record." *Schaefer*, 305 Kan. at 595. The district court's finding that Parks-Maki ultimately understood the consequence of his no-contest plea is supported by substantial competent evidence in the record. The court did not abuse its discretion in finding that Parks-Maki had not shown good cause to withdraw his plea.

2. *Parks-Maki waived his remaining challenges to his pretrial and competency proceedings when he entered his plea.*

Parks-Maki raises several other challenges in his appeal, few of which were argued before or even mentioned to the district court. Though Parks-Maki did not object to the district court's competency finding in 2023 when he was discharged from Osawatomie State Hospital, he argues that the court's finding was procedurally flawed. He also claims the court erred in denying a pretrial request (that he later withdrew) to discharge Todd as his attorney and represent himself.

But as we have noted, Parks-Maki waived his ability to present these arguments when he entered his plea in this case. See K.S.A. 22-3602(a); *Marinelli*, 307 Kan. at 775. Parks-Maki's plea agreement confirmed he understood that by entering the plea of no contest, he waived his "right to appeal a finding of guilt or any pretrial rulings." At the plea hearing, the district court again informed Parks-Maki that he waived his right to appeal his conviction. As the district court determined, Parks-Maki understood the consequences of his plea and thus knowingly waived the right to challenge his conviction on appeal. As such, K.S.A. 22-3602(a) precludes our review of the other claims Parks-Maki has presented in this appeal.

Affirmed.